DANIEL CRANE *vs.* INHABITANTS OF LINNEUS.

Aroostook. Opinion January 17, 1885.

*U. S. pension. U. S., R. S.,* § § *4745, 4747, 5485.*

One who loans money to a pension claimant to enable him to establish his claim, and to be repaid when the pension money is received, is not debarred from recovering back his loan by U. S., R. S., § 5485.

A verbal promise by a pension claimant, to pay a debt, when he receives his pension, or out of his pension, is not such a pledge, mortgage, assignment, transfer, or sale of the pension claim, as is forbidden by U. S., R. S. § 4745.

When the pension check has come into the hands of the pensioner, it is then at his free disposal, and its proceeds are liable to attachment, unaffected by U. S., R. S. § 4747.

ON REPORT upon an agreed statement.

Assumpsit for money had and received, amounting to three hundred twenty-three dollars and thirty-four cents, which the plaintiff paid the selectmen of the defendant town, April 27, 1881, in settlement of a suit against him by these defendants, wherein they trusteed the proceeds of the plaintiff's pension check, which he had deposited with Almon H. Fogg & Co. of Houlton. That suit was for supplies furnished him by the town of Linneus, and money to aid him in procuring evidence to prove his claim to a pension, upon his promise to repay all the same upon the receipt of his pension. By the agreed statement it appears that at the time of the service of the trustee writ upon Mr. Fogg, he was about to pay the plaintiff five hundred dollars

of the pension money, the whole amount of the pension check being twelve hundred and twenty-five dollars.

"Mr. Fogg asked why he was trusteed. A selectman of Linneus recounted the circumstances of furnishing the money and goods and said that they trusteed the money so it would stay there till the court passed on it, so they would know if they were entitled to it or not. Crane said, 'By jiminetty! that is using me too bad; I wanted the money to use.' The selectmen told him that he had refused to pay them and that they were driven into this; that they did not want to injure him and wanted to get what belonged to them. They talked some time. Mr. Fogg said after a while, 'Why can't you settle now?' The selectman expressed his willingness to settle if Mr. Crane would pay. Mr. Fogg said, 'Hadn't you better settle and pay the town, Mr. Crane, and take your balance?' Mr. Crane said, 'I don't know but I'll have to.' The selectmen talked about what the bill would be, and wanted Mr. Crane to pay the cost. Mr. Fogg said, 'Pay your own cost, take the face of your bill, and let him give you an order, and settle that way. He is quite a poor man.' The selectmen consulted outside and concluded to take the face of the account and told Mr. Fogg so. Mr. Fogg wrote an order in favor of Linneus. Mr. Crane signed it and handed it to the selectman."

*W. M. Robinson* and *F. A. Powers*, for the plaintiff, contended that the case of *Smart* v. *White*, 73 Maine, 332, was decisive of this. That the agreement of the plaintiff to pay the town out of his pension money was void, and that the attachment of the money by trustee process was in contravention of the law, citing the several statutes referred to in the opinion. The counsel also contended that the circumstances of the payment by the plaintiff to the selectmen show that it was not the voluntary act of the plaintiff; that the defendants were using the delay of the law to enforce an illegal contract and wrest from the plaintiff the proceeds of his pension check which he stated he wanted to use. Counsel further cited: *Eckert* v. *McKee*, 9 Bush, 355; and *Hayward* v. *Clark*, 50 Vt. 617, and contended that *Spelman* v. *Aldrich*, 126 Mass. 113, was decided upon the authority

of *Kellogg* v. *Waite*, 12 Allen, 529, which was before the passage of the law.

*Madigan and Donworth*, for the defendants, cited: *Fellows* v. *School District*, 39 Maine, 559; *Kelley* v. *Merrill*, 14 Maine, 228.

EMERY, J. In *Smart* v. *White*, 73 Maine, 332, cited by plaintiff, "the defendant, an overseer of the town, assisted her (the plaintiff) to obtain her pension, under a verbal agreement with her, he said, that whatever back pay might be received should be applied towards her indebtedness to the town for her support." The verdict found the fact that the defendant got the back pay from her under and by force of the contract. The defendant was to assist her in getting the pension, and she was to make compensation for such assistance by turning the back pay over to the town for which the defendant was acting. It was held that the contract itself, and the reception of the money under it were forbidden by § 5485, U. S., R. S., and that the money could be recovered back.

In the case now at bar, neither the town nor its officers undertook to assist in obtaining the plaintiff's pension. There was no agreement to assist, and no agreement for compensation for assistance. The money was not paid under any such agreement. It was paid after an attachment by suit, and to settle the suit. The case, therefore, does not fall within the principle of *Smart* v. *White*, and the payment by the plaintiff of his debt to the town was not forbidden by § 5485.

The plaintiff, however, invokes § 4745, U. S., R. S., which forbids "any pledge, mortgage, assignment, transfer or sale" of the pension claim. The case, however, does not show any such. The town furnished the plaintiff with pauper supplies, as it was by law obliged to. It also advanced him money to procure evidence to obtain his pension. The plaintiff promised to repay the town when he obtained his pension. The question of the town's authority to advance the money is immaterial, as plaintiff cannot recover back on that ground. There was nothing in this transaction that tends to secure to the town any special privilege

in the pension claim, or any control over it. Such a promise was no pledge nor mortgage. The town was only a creditor of the plaintiff, without regarding the statute. It had no more legal interest in the pension claim, and no more control over it than his other creditors. It did not receive the money under any alleged pledge. It brought its action as a general creditor and attached the plaintiff's property. Thereupon the plaintiff paid his admitted debt. Such payment was not forbidden by § 4745.

The plaintiff also invokes § 4747, U. S., R. S., which declares that no sum of money due, or to become due to any pensioner, shall be liable to attachment. This money was not due him as a pensioner. It had been collected, and had come into his possession and had been entrusted by him to the trustee. The reasons and authorities for holding money, the proceeds of a pension check, in this situation, to be attachable, are clearly and fully stated in *Friend in Eq.* v. *Garcelon*, 77 Maine, 25. The principle there enunciated governs this case on this point.

There was no duress. The defendants desired to collect an admitted debt. They used the common method of attachment. The plaintiff thereupon paid his debt and no more, as the costs were forgiven him. It was his duty to pay it, and it was the town's right to receive it.

*Judgment for defendants.*

PETERS, C. J.   DANFORTH, VIRGIN, FOSTER and HASKELL, JJ., concurred.